Argued March 26, affirmed May 14, petition for rehearing denied
June 14, petition for review denied July 17, 1973

## FREY, *Respondent, v.* WILLAMETTE INDUSTRIES, INC. (No. 20070), *Appellant.*

509 P2d 861

*George M. Joseph,* Portland, argued the cause for appellant. With him on the brief were Bemis, Breathouwer & Joseph and Roger R. Warren, Portland.

*Robert J. Thorbeck,* Salem, argued the cause for respondent. With him on the brief were Lafky & Drake, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

This is a workmen's compensation case involving an alleged occupational disease. The defendant-employer initially rejected the claim and at the request of claimant a hearing was held. The hearing officer ordered the defendant to pay the claim and pursuant to ORS 656.808 the defendant rejected the order, which constituted an appeal of the hearing officer's decision to a medical board of review. Defendant also appealed to the circuit court pursuant to ORS 656.810

(4) the denial by the hearing officer of motions to dismiss, continue the hearing, and stay the claim. This appeal is from the decision of the circuit court affirming the denial of those motions.

Claimant was 64 years old and had been in defendant's employ in a lumber mill for nearly 48 years. In December 1970 his doctor advised him that his hypertension and high blood pressure required that he stop such employment. In 1969 claimant's trouble had become symptomatic when a severe, spontaneous nose bleed occurred while he was on the job. He consulted his family physician and was given medication. He was then referred to a specialist, Dr. Carey, who diagnosed the high blood pressure and hypertension, saying it was caused by physical and nervous exhaustion and advised against returning to work until he calmed down. He took a three-week rest but soon after he returned to work his symptoms reappeared. Toward the end of 1970 the symptoms were severe enough that on December 4, 1970, upon the advice of Dr. Carey not to return to his employment any longer, he did terminate it. On December 10 claimant filed an occupational disease claim in which he gave the names and addresses of his family doctor (Dr. Regier) and Dr. Carey. The defendant's insurance carrier, without seeking medical information, denied the claim in a letter dated December 21, 1970.

Claimant immediately requested a hearing which was set for March 5, 1971. On February 3 the carrier requested information from Dr. Regier only. On February 19 defendant's attorney obtained a postponement of the hearing date on the ground he would be unable to attend on the scheduled date. On February 22 defendant requested an examination of claimant by Dr. Hickman, a certified clinical psychologist. Upon

advice of his counsel claimant refused this examination but on February 23 a copy of Dr. Carey's report was provided the carrier. The report contained the history of claimant's nervous condition and high blood pressure.

On March 8 the hearing was reset to March 15 by mutual agreement of counsel. On March 10 the medical information requested from Dr. Regier was received by defendant's carrier. On March 11 defendant's counsel talked to Dr. Carey on the telephone.

At the hearing, the defendant moved (1) to dismiss the claim as untimely filed under ORS 656.807, (2) to stay the hearing because claimant had refused to submit to an examination by Dr. Hickman pursuant to ORS 656.325, (3) to postpone the hearing because of insufficient notice, (4) to require the claimant to be examined by Dr. Hickman, or Dr. Wayne Rogers, a cardiovascular specialist, and (5) for a continuance in order to cross-examine Dr. Carey and Dr. Regier. The motions were denied except that the motion for a continuance to cross-examine Dr. Regier was allowed. His deposition was thereafter taken on April 12, and the hearing was closed on May 20, 1971.

In June the hearing officer ordered compensation plus a penalty and attorney fees. The circuit court affirmed the hearing officer except as to the penalty and a portion of the attorney fees and remanded the case to the medical board of review for further proceedings. The questions we decide relate to the denied motions only.

■ We find that the claim was timely filed under ORS 656.807.(1).[1] Defendant's contention in this

---

[1] ORS 656.807 (1) provides:

"* * * [A]ll occupational disease claims shall be void un-

regard is that claimant was informed by Dr. Carey that he was suffering from his alleged occupational disease as early as October 1969 which was prior to the 180-day period specified in the statute. In October 1969 Dr. Carey only told claimant not to go back to work under the pressure he was experiencing until his condition calmed down. It was in December 1970 that Dr. Carey informed claimant that he had the disease and that he should not return to his work. This was well within the 180-day limitation. *See Templeton v. Pope and Talbot, Inc.,* 7 Or App 119, 490 P2d 205 (1971).

■ Defendant also claims that the motion for a stay of the hearing should have been allowed because of claimant's refusal to be examined by the clinical psychologist. We agree with the following part of the circuit court's opinion:

"'* * * ORS 656.325 provides that the claimant must, upon request, submit himself for "medical examination". I am of the opinion the [sic] Dr. Hickman, a licensed clinical psychologist does not come with the mandatory provisions of that statute. ORS 656.002 (12) defines "doctor" or "physician" as a person duly licensed to practice one or more of the healing arts. ORS Chapter 675, does not provide expressly that the practice of psychology is one of the "healing arts". "Practice of psychology" is defined by ORS 675.010 and ORS 675.060 sets forth specific limitations on the practice of psychology, and requires psychologists engaged in psycho therapy, in order to make provisions for diagnosis and treatment of medical

less a claim is filed * * * within three years after the last exposure in employment subject to the workmen's compensation law and within 180 days from the date the claimant becomes disabled or is informed by a physician that he is suffering from an occupational disease whichever is later."

problems, to collaborate, in each instance, with a physician. Certified psychologists are prevented from practicing medicine, and the statute further provides that such certification by a psychologist does not authorize such psychologists to practice a profession, or a system or method of healing, that is now regulated by statute. The practice of medicine as defined in ORS 677.050 is one who undertakes to diagnose, cure or treat in any manner, * * * any disease, illness, * * * defect or abnormal physical or mental condition. The immediate question before the Hearings Officer was whether or not the claimant has a compensable disease under the occupational disease law, and in my opinion, the clinical psychologist does not qualify under the applicable statutes to administer a medical examination for that purpose. The Sandowl [sic] opinion [Sandow v. Weyerhaeuser Co., 252 Or 377, 449 P2d 426 (1969)] is not in point. We are concerned in this case with the requirement that a party seeking compensation submit to an examination by a psychologist, and not whether the opinion of such a psychologist is admissible * * *.'"

Inasmuch as the hearing officer properly concluded that the claimant had no duty to submit to the psychological examination requested by defendant, there was no statutory basis for dismissing or staying the proceedings as was requested on this account in the motions.

■ Defendant contends that it had insufficient notice of the March 15 hearing. ORS 656.283 (4)[2] requires 10 days' notice be given. However, defense counsel had agreed to the hearing date. This agreement acted to waive the 10-day notice requirement.

---

[2] ORS 656.283 (4) provides:

"At least 10 days' prior notice of the time and place of hearing shall be given to all parties in interest by mail * * *."

■ The defendant also cites as error the denial by the hearing officer of its request to require the claimant to submit to an examination by Dr. Hickman or Dr. Rogers. If the hearing officer had had sufficient reason to believe that the evidence supporting the claim would be incomplete without an examination by either doctor, he should have granted a continuance for the purpose of such an examination. Rules of Practice and Procedure of Administrative Order WCB No. 4-1970, Art 5.05 I.:

"The hearing officer, to avoid a matter being remanded pursuant to ORS 656.295 (5),[9] has the authority to require further evidence on any issue which otherwise may be incompletely or insufficiently developed or heard * * *."

■ There is nothing in the record to indicate such examinations were necessary. The defendant attempted to prove the necessity for the examinations by means of a letter written *to* Dr. Carey quoting him, in the telephone conversation with defendant's counsel, as having said an examination by either of the two above specialists would be necessary to determine the claim. However, this letter was admitted solely for the purpose of showing the conversation had occurred, not for the alleged content of that conversation.

Defendant's last contention is that a continuance should have been allowed for cross-examination of

---

[9] ORS 656.295 (5) provides:

"The review by the board shall be based upon the record submitted to it under subsection (3) of this section and such oral or written argument as it may receive. However, if the board determines that a case has been improperly, incompletely or otherwise insufficiently developed or heard by the hearing officer, it may remand the case to the hearing officer for further evidence taking, correction or other necessary action."

Dr. Carey. It is argued in this respect that a continuance was allowed to cross-examine Dr. Regier by deposition which delayed the close of the hearing and that the same should have been done with reference to Dr. Carey, because doing so would not have prolonged the close of the hearing.

6. We consider that this assignment of error raises the following questions. (a). What was the nature of defendant's motion? (b). Was it error for the hearing officer to consider each motion separately? (c). Considered separately, was the denial erroneous?

(a). What was the nature of the motion? As noted above defendant requested one continuance to do two things. Since one continuance was granted the first question is what does the defendant have to complain about. Defendant does have a basis for his assignment of error in that the "continuance" he requested must be viewed as two separate motions. The motions were really requests for rulings as to whether the hearing officer would admit into evidence the depositions of Drs. Regier and Carey if they were offered after the close of the formal hearing. The question of whether the granting of a continuance for a specific purpose acts to keep the hearing record open for any evidence not previously presented is not now before this court. The defendant rightfully understood the denial of his motion for a continuance to depose Dr. Carey as a ruling that such evidence would not be admitted if offered.

(b). We feel it was proper for the hearing officer to consider the merits of each motion separately. The real question is whether it is possible for a hearing officer to grant a motion for a continuance for a given purpose while denying a similar motion with a

different purpose. Inherent in the allowance of *each* motion is the possibility of additional delay. The delay for one might be much longer than for the other, and with less reason for it. The scheduling of two depositions instead of one, each deposition requiring the presence of two attorneys, one doctor and the necessary recording personnel, increases the possibility of delay. In light of this, we feel that it is proper for the hearing officer to examine separately the merits of each motion to determine if there was sufficient reason for granting it. To do otherwise would open the door to the possibility of endless delay.[④]

(c). Considered separately, the denial was not erroneous. The record reveals that defendant had more than ample time to subpoena Dr. Carey or take his deposition prior to the hearing.

Rules of Practice and Procedure of Administrative Order WCB No. 4-1970, Art 5.05 A. states:

> "Each party shall be prepared to produce * * * all necessary evidence * * *. The Board does not favor continuances * * *."

Art 5.05 D. states in part:

> "The Workmen's Compensation Board believes that ORS 656.310 (2) is intended to strongly encourage the use of written medical reports and limit the need for personal appearances by doctors. The costs of securing expert medical witnesses should be borne in mind and every effort made to keep from calling doctors as witnesses. Since this will not always be possible the following rule will be applied.

---

[④] ORS 656.283 (3) provides:

"The board shall refer the request for hearing to a hearing officer for determination as expeditiously as possible."

> *"Reports from claimant's doctor will be accepted as prima facie evidence unless defendant, in desiring to explore that written evidence, subpoenas claimant's doctor for cross-examination."* (Emphasis supplied.)

Defendant had notice of these rules of procedure. The hearing officer was correct in denying the motion on the ground defendant had failed to subpoena Dr. Carey when he had the opportunity to do so.

Affirmed.