Argued and submitted October 15, 1979,
reversed and remanded April 7, reconsideration denied May 15,
petition for review denied July 17, 1980 (289 Or 373)

REPP,
*Appellant,*
*v.*
HAHN,
*Defendant,*
and
WALKER,
*Respondent.*

(No. A7611-15547, CA 13314)

609 P2d 398

Richard P. Noble, Portland, argued the cause and filed the brief for appellant.

Bruce Spaulding, Portland, argued the cause for respondent. With him on the brief was Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

In this action for wrongful death, plaintiff appeals from a trial court order sustaining defendant Walker's demurrer to plaintiff's fourth amended complaint. The question is whether the action against Walker was filed "within three years after the occurrence of the injury causing the death of the decedent," ORS 30.020(1). We hold that the action was so filed and reverse and remand for further proceedings.

We take the facts from the complaint. Plaintiff is the administrator of the estate of Beverly Repp. Defendants Walker and Hahn are physicians specializing in dermatology. In December 1967, Beverly Repp consulted Dr. Walker in his professional capacity to have him inspect a mole on her scalp, advise her of the nature of the mole and provide any necessary treatment. After examining the mole, Dr. Walker diagnosed it as a benign condition of lupus erythematosus. Dr. Walker examined the mole periodically during the period ending in June 1972, and did not alter his original diagnosis. The scalp condition was not lupus erythematosus, however, but was a junctional nevus, a benign growth with the potential to metamorphose into a cancerous condition known as malignant melanoma. In February 1973, Dr. Walker sold his medical practice to Dr. Hahn and referred Beverly Repp to Dr. Hahn for further treatment. Dr. Hahn examined Beverly Repp's scalp in November 1973, but did not properly diagnose the growth. In the summer of 1974, the mole began to grow, and in March 1975 another physician diagnosed Beverly Repp's condition as malignant melanoma. The cancer spread through Beverly Repp's scalp and to other parts of her body. As a result, Beverly Repp died on March 1, 1976.

The complaint alleges that defendants were negligent in several particulars concerning their failure to advise Beverly Repp properly as to the nature, cancerous potential and necessary treatment of her scalp

[673]

condition.[1] Plaintiff further alleges that defendants' negligence caused Beverly Repp physical and mental suffering and, eventually, her death, causing plaintiff general and special damages.

The trial court sustained defendant Walker's demurrer to the fourth amended complaint on the basis that, as to Walker, the injury occurred in February 1973, when Walker sold his medical practice to Dr. Hahn. Since the complaint was filed November 6, 1976, the trial court held the action was barred by ORS 30.020(1), which requires the action to be brought within three years of the injury causing the decedent's death.

ORS 30.020(1), part of Oregon's Wrongful Death Act, provides:

> "When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, may maintain an action against the wrongdoer, if the decedent might have maintained an action, had he lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within three years after the occurrence of the injury causing the death of the decedent."[2]

The issue here is when the "injury" occurred. Plaintiff's fourth amended complaint alleges that decedent's injury occurred in the summer of 1974 when the

---

[1] Plaintiff also alleges that defendant Walker's misrepresentations as to the nature of Beverly Repp's condition prevented Beverly Repp from discovering defendants' negligence and her own injuries until the March 1975 diagnosis. Because of our disposition of this case, we need not discuss the issues raised by this allegation.

[2] Defendant concedes that "decedent might have maintained an action, had [s]he lived, against the wrongdoer for an injury done by the same act or omission," ORS 30.020(1). Thus, plaintiff's satisfaction of that provision of the statute is not at issue.

mole began to grow. Defendant Walker contends that the injury occurred either in June 1972, when he last examined decedent, or in February 1973, when he sold his practice and referred decedent to Dr. Hahn. In essence, defendant argues that the three-year period in ORS 30.020(1) starts to run at the time of the last tortious act.

In referring to "an injury done by the . . . act or omission," the statute recognizes that "a substantial interval may occur between the negligent act and the resulting damage," M. Franks (England), Limitation of Actions 195 (1959), *quoted in U.S. Nat'l Bank v. Davies,* 274 Or 663, 667, 548 P2d 966 (1976), and, therefore, that the "wrongful act or omission" and "injury" do not necessarily occur simultaneously. *See Larcher v. Wanless,* 18 Cal3d 646, 135 Cal Rptr 75, 557 P2d 507, 512 n. 11 (1976), where the court stated that the statutory term "injury" "seems clearly to refer to the damaging effect of the alleged wrongful act and not to the act itself."

Defendant also contends that plaintiff's decedent was injured when Dr. Walker failed to remove the mole, leaving her "at risk" of developing malignant melanoma. This argument is contrary to the principle stated in *U. S. Nat'l Bank v. Davies,* 274 Or 663, 668, 548 P2d 966 (1976), that "The threat of future harm, not yet realized, is not enough" to constitute harm, quoting from Prosser, Law of Torts 143 (4th ed 1971).

At the moment defendant Walker erroneously diagnosed decedent's scalp condition, decedent suffered no actionable harm. As stated by Prosser:
> "* * * Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered." Prosser, Law of Torts 143-44 (4th ed 1971), *quoted in U. S. Nat'l Bank v. Davies, supra,* 274 Or at 668.

[675]

In *U.S. Nat'l Bank v. Davies, supra,* an action for legal malpractice, the court held that the damage occurred when the plaintiff was aware, or should have been aware, that the harm was caused by the defendant.[3] *Cf. Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1351 (1980) (action under Tort Claims Act)

Applying this rule to the present case, the injury occurred no earlier than the summer of 1974, when the mole began to grow. That event was the earliest time when decedent could have been aware of any harm traceable to defendant.[4] Since the complaint was filed

---

[3] *Associated Indemnity Corp. v. State Industrial Acc. Com'n,* 124 Cal App 378, 12 P2d 1075 (1932), illustrates the application of a similar rule. In that case claimant, who suffered from a work-related respiratory disability, filed a workers' compensation claim under a statute requiring a claim to be filed within six months of the "injury." The court stated:

> "It follows that no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves." 12 P2d at 1076.

This language was quoted with approval in *Schiele v. Hobart Corporation,* 284 Or 483, 489, 587 P2d 1010 (1978), an action for negligent infliction of an occupational disease.

[4] *United States v. Reid,* 251 F2d 691 (5th Cir. 1958), a malpractice action under the Federal Torts Claims Act, presents facts similar to those in the present case. In *Reid,* the government appealed after trial, arguing that plaintiff had not filed his action in a timely fashion. The facts showed that plaintiff's doctor either misread or misinterpreted a radiologist's report and informed plaintiff on March 10, 1949, that nothing was wrong with his lungs. In fact, plaintiff suffered at the time from incipient tuberculosis. In early 1950, plaintiff's condition deteriorated, and a February 16, 1950, examination disclosed that he had advanced tuberculosis. Plaintiff filed his action November 29, 1951. The Federal Torts Claims Act required plaintiff to file his action within two years of the time his claim accrued. Georgia law, which governed the time from which the two-year limitation ran, provided that a cause of action accrues when damage is sustained. Applying this rule, the court stated:

> "Here, amidst all the medico-legal conceptual uncertainty, we know one thing positively. We know that immediately upon Dr. Lowe's giving Reid the wrong advice, *no* harm from it had yet befallen Reid. All that occurred was that Reid heard words—words which were wrong and negligently spoken—but without injurious consequences of any

within three years of that time, we need not fix the precise time at which the limitations period started to run. We hold that the trial court erred in sustaining defendant Walker's demurrer.[5]

Reversed and remanded for further proceedings.

kind at the moment. Nor was there any an hour later, or the next day. Was there the following week? The next month? The next three months? Whatever the precise moment, we know absolutely that it was *some time* later—between March 10, 1949, and February 16,1950—that the first injurious consequence of faulty advice could have occurred." 251 F2d at 695 (emphasis in original).

The court found that the evidence at trial supported the conclusion

"* * * that from March 10, 1949, down to a time just a few weeks before February 16, 1950, no perceptible change had occurred. Reid continued to feel the same as he had, experienced the same symptoms, continued on doing his regular work and following his ordinary regimen." 251 F2d at 695.

The court thus held that there was sufficient evidence to show that the injury occurred after November 28, 1949, so that the November 29, 1951, filing was timely.

[5] Our interpretation of the Wrongful Death Act is not an act of judicial legislation improperly extending the Act by implication, as defendant suggests, citing *Richard v. Slate,* 239 Or 164, 167-68, 396 P2d 900 (1964), and *McClaugherty v. Rogue River Electric Co.,* 73 Or 135, 140 P 64, 144 P 569 (1914). Rather, we have merely construed its terms consistently with principles of tort law established by the Oregon Supreme Court. *Cf. Berry v. Branner,* 245 Or 307, 313, 421 P2d 996 (1966) (construing "accrued" in ORS 12.010).